In re Sherrill Annette
GUEVARA, Debtor.

**Harry W. PETTIGREW, in his office and capacity as Trustee-in-Bankruptcy of the Estate of Sherrill Annette Guevara, Plaintiff,**

v.

**HOUSTON'S BUILDING MATERIALS AND SUPPLY CO., INC.; Jack P. Turner; Intercall Systems, Inc.; Statewide Specialists, Inc.; Statewide Lath & Stucco, Inc.; Mincey Marble Mfg., Inc.; Glover Linoleum and Carpet Co., Inc.; West Cash & Carry Building Materials of Forest Park, Inc.; Johnson Electric Co., Inc.; Rent Central, Inc. d/b/a American Rental Service; Georgia Marble Company T/A Jimco Stone Centers, Inc.; Southeastern Wholesale Supply Co., Inc.; Guest Quarters, Inc.; Alcan Aluminum Corporation d/b/a Alcan Building Products; and Sherrill Annette Guevara, Defendants.**

Bankruptcy No. A86–06445–WHD.
Adv. No. 86–0714A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 19, 1986.

Harry W. Pettigrew, Pettigrew & Trippe, P.C., Atlanta, Ga., for plaintiff.

C. David Butler, Donna P. Bergeson, Alston & Bird, Atlanta, Ga., for Houston's Building Materials & Supply Co., Inc.

Grant T. Stein, Alston & Bird, Atlanta, Ga., for Statewide Specialists, Inc.

Charles B. Rice, Van Gerpen & Rice, Atlanta, Ga., for Johnson Electric Co., Inc.

Jack P. Turner, Turner, Turner, & Turner, Atlanta, Ga., for Jack P. Turner.

Annette K. McBrayer, Aiken & Ward, Atlanta, Ga., for Mincey Marble Mfg., Inc.

Danny C. Bailey, Slutzky, Wolfe & Bailey, Atlanta, Ga., for Glover Linoleum and Carpet Co., Inc.

Michael C. Clark, Clark & McLaughlin, Lawrenceville, Ga., for Rent Central, Inc.

J. Ben Shapiro, Jr., Michael A. Mogill, Stokes, Shapiro, Fussell & Genberg, Atlanta, Ga., for Georgia Marble Co.

John L. Blandford, Blandford & Werbin, P.C., Chamblee, Ga., for Southeastern Wholesale Supply Co., Inc.

Louis F. Ricciuti, Avondale Estates, Ga., for Sherrill Annette Guevara.

Theodore Brown, Jr., Kilpatrick & Cody, Atlanta, Ga., for Guest Quarters, Inc.

W.H. DRAKE, Jr., Bankruptcy Judge.

### ORDER

This case is before the Court on motions for summary judgment by plaintiff/Trustee, Harry W. Pettigrew, and by one defendant, Houston's Building Materials and Supply Co., Inc. ("Houston"). Since many of the issues raised by these motions have been previously resolved, some procedural and factual background of the case is appropriate.

At the commencement of her case, the debtor was the owner of certain improved real property located at 525 Spalding Drive in Fulton County ("Real Property") on which the above-named defendants held claims of record. The Trustee caused the issuance of a "Notice of Trustee's Sale of Certain Property Free and Clear of Encumbrances and Certain Expenses", which provided in part that the costs of administration would be charged against the funds available for distribution to all claimants to the sale proceeds on a basis of the most junior of such claimants first. Following the Court's authorization of the sale of the Real Property in accordance with the Notice, the Trustee held the sale proceeds of $162,038.45 in an interest-bearing account and initiated this adversary proceeding to determine the validity, priority, and extent of liens and other interests in the Real Property for the purposes of distribution of the proceeds.

The Trustee's complaint alleged that certain claims of the above-named defendants were ineffective as encumbrances against the Real Property due to their failure to properly perfect their materialman's liens. A default judgment against Intercall Systems, Inc., Statewide Lath & Stucco, Inc., and West Cash & Carry Building Materials of Forest Park, Inc., as well as an admission in the pleadings filed by Statewide Specialists, Inc. ("Statewide Specialists") have resolved this issue.

The Trustee does not dispute the validity of the other liens and interests in the Real Property which fall into the following types: (1) a first security deed held by Houston's; (2) special liens recorded on the General Execution Docket ("GED") pursuant to materialman's liens held by Houston's, Mincey Marble Mfg., Inc. ("Mincey Marble"), and Johnson Electric Co., Inc. ("Johnson Electric"); (3) a materialman's lien held by Glover Linoleum and Carpet Co., Inc. ("Glover Linoleum"); and (5) general judgment liens held by Jack P. Turner ("Turner") (judgment entered September 15, 1981), Rent Central, Inc. d/b/a American Rental Service ("Rent Central") (judgment entered September 30, 1983), Georgia Marble Company T/A Jimco Stone Centers, Inc. ("Georgia Marble") (judgment entered December 20, 1983), Southeastern Wholesale Supply Co., Inc. ("Southeastern Wholesale") (judgment entered November 27, 1984), Alcan Aluminum Corp. ("Alcan Aluminum") (judgment entered January 18, 1985), and Guest Quarters, Inc. ("Guest Quarters") (judgment entered June 5, 1985).

As to priority, the complaint properly asserted that Houston's first security deed should be paid as a first priority, that materialman's lien claims, including the special lien judgments, should be paid prior to general judgment liens, and that general judgment liens should be paid in order of the date of the entry of the judgment. Due to the amounts claimed by the more senior claimants, the complaint asserted that no portion of the proceeds would be distributed to Alcan Aluminum and Guest Quarters, as no funds would remain available after paying the more senior lienholders. A default judgment has been entered against Alcan Aluminum, and Guest Quarters' answer to the complaint does not dispute the legal conclusion that the other claimants are entitled to priority over its claim.

On December 5, 1986, a consent order was entered which authorized distributions as to eight of the ten remaining claims

otherwise entitled to share in the proceeds. The most junior of such claimants—Statewide Specialists and Southeastern Wholesale—were not ordered to receive distributions at that time since their liens may be subject to the debtor's claim of exemption (as raised in her cross-claim, but not at issue herein) and will be subject to administrative expenses,[1] the amount of which will be determined at a later date.

The consent order thus authorized distribution to the claimants only to the extent of the undisputed portion of their claims. Therefore, the pending motions for summary judgment have raised only one issue which is not yet resolved: whether the judgment lien creditors are entitled to post-judgment interest on their claims when the underlying judgments do not expressly provide for such interest but the writs of fieri facias ("fi.fa.'s") do make such a provision. The underlying judgments obtained by Rent Central, Georgia Marble, and Mincey Marble included provisions for post-judgment interest, and the distributions authorized by the consent order took such interest into account and were therefore ordered to be final distributions.[2]

The Court is of the opinion that the reasoning of *Bowers v. Price,* 171 Ga.App. 516, 320 S.E.2d 211 (1984) (cert. denied September 4, 1984), dictates the conclusion that a claimant is not entitled to post-judgment interest on a judgment lien unless a provision for such interest is specifically included in the underlying judgment, and that this is true in spite of a specific provision in the fi.fa. The *Bowers* case involved an attempt to recover on a clerk of court's bond after the clerk refused to issue a fi.fa. that included post-judgment interest because the underlying judgment had no such provision. Affirming a summary judgment

in favor of the clerk, the Georgia Court of Appeals stated in pertinent part:

It is true that the judgment creditors have a judgment for a principal amount and that "[a]ll judgments in this state shall bear interest upon the principal amount recovered at the rate of 12 percent per year." OCGA § 7–4–12. However, the final determination of the rights and claims of the parties to litigation is a judicial rather than a ministerial function. [citation omitted]. Where, as here, a right to execution and collection of post-judgment interest is asserted, it appears that the law contemplates that such right be evidenced by an underlying judgment which has been signed by the trial court and filed with the clerk. See OCGA §§ 9–11–131, 9–11–132. ... A judgment creditor or one who claims through a judgment creditor bears the responsibility of seeing that the judgment under which he claims sets forth all of his adjudicative rights and, if any issue in that regard arises, the appropriate authority with which to deal is the trial court, not the clerk who has only ministerial authority.

*Bowers v. Price,* 171 Ga.App. at 519, 320 S.E.2d at 213–14. Thus, in spite of the mandatory language of O.C.G.A. § 7–4–12, it appears that any entitlement to post-judgment interest must be based on a specific provision in the underlying judgment and not on a provision in the fi.fa., since issuing such an execution is merely a ministerial function meant to result in an execution which "shall follow the judgment upon which it issued...." O.C.G.A. § 9–13–3.

In the case at bar, the Court concludes, from a review of the documents submitted, that the judgments obtained by Turner, Houston's, Johnson Electric, and Southeastern Wholesale contain no express pro-

---

1. Southeastern Wholesale's original answer alleged that costs of administration should be shared pro-rata, but it has retreated from this position by joining in the consent order authorizing full distribution to some claimants and by its response to the Trustee's motion for summary judgment which states that it has no objection to the motion.

2. Southeastern Wholesale's original answer objected to interest being included on any special lien judgments as opposed to general judgments filed on the GED. However, by the same actions stated in footnote 1, Southeastern Wholesale has retreated from this position.

vision for post-judgment interest. Therefore, these claimants are not entitled to such interest, and the distributions authorized by the consent order to Houston's (on its special lien), Johnson Electric, and Turner may now be deemed to be final distributions.

Statewide Specialists argues that its judgment provides for an award of post-judgment interest in paragraph 1 of the state court's default judgment entered on September 20, 1984, which awarded principal "plus interest on that amount from February 8, 1983 at the rate provided by law, plus costs." A subsequent order entered on October 25, 1984 amended paragraph 1 "to include interest on the principal amount of $8,309.00 at the rate of 7% (seven per centum) per annum, as allowed by O.C.G.A. § 7–4–2 (Michie 1982), from February 8, 1983 to September 20, 1984 in the total amount of $940.17, with principal and interest totalling $9,249.17." The Court agrees with the Trustee that, while the original judgment in favor of Statewide Specialists is ambiguous as to post-judgment interest, the amendment to the judgment makes it clear that what was intended was only interest from February 8, 1983 until the September 20, 1984 date of entry of the judgment. Therefore, Statewide Specialists is not entitled to post-judgment interest on its claim.

Accordingly, it is ORDERED that the Trustee's motion for partial summary judgment is GRANTED to the extent that the following claimants shall not receive distributions for post-judgment interest on their claims: Houston's, Turner, Johnson Electric, Southeastern Wholesale, and Statewide Specialists. All distributions authorized by the consent order entered December 5, 1986 are therefore deemed final distributions to those claimants.

It is FURTHER ORDERED that Houston's motion for summary judgment is DENIED to the extent that it seeks post-judgment interest on the judgment lien claim held by Houston's.